IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SENECA ONE FINANCE, INC.           :

                                              :

   v.                              :   Civil Action No. DKC 10-1704

                                              :

STRUCTURED ASSET FUNDING, LLC      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract dispute are motions filed by Defendant Structured Asset Funding, LLC, for a more definite statement (ECF No. 13), and to stay or, in the alternative, to transfer venue (ECF No. 11). The motions are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion for a more definite statement will be denied and the motion to stay will be granted.

**I.  Background**

    **A.  Factual Background**

The following facts are set forth in Plaintiff's complaint. Plaintiff Seneca One Finance, Inc., a Maryland corporation with its principal place of business in Bethesda, Maryland, is engaged in the business of purchasing structured settlement annuity payments from annuitants. Typically, Plaintiff negotiates and enters into contracts with structured settlement

annuitants for the purchase of future payments in exchange for lump sums of cash. The lump sum amounts are funded by outside sources to which Plaintiff subsequently assigns the rights to receive future annuity payments. Thus, Plaintiff's role in these transactions is essentially that of a broker, and the success of its business depends greatly on the reliability of its funding sources and the "discount rates" they offer to Plaintiff. (ECF No. 2, ¶ 3).

In or around September 2008, Plaintiff "reached an agreement" with Defendant Structured Asset Funding, LLC, pursuant to which Defendant "would fund [Plaintiff's] structured settlement transactions" and Plaintiff would assign to Defendant the rights to future annuity payments. (*Id*. at ¶ 10).[1] In reliance on this agreement, Plaintiff "expended significant time and resources underwriting and processing transactions . . . and

---

[1] At the time the complaint was filed, Defendant was a Florida limited liability company with two members, both of whom were Florida residents. (ECF No. 1, ¶ 2). Since that time, Defendant has merged with a Nevada limited liability company of the same name. (ECF No. 24, Ex. 1, Nevada certification).
On October 11, 2010, Defendant moved, pursuant to Fed.R.Civ.P. 25(c), to substitute the Nevada limited liability company as the proper defendant in this action. (ECF No. 23). Rule 25(c) provides, in pertinent part, that when "an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action . . . ." Plaintiff has not opposed this motion. Because substitution in this manner does not affect the court's jurisdiction, *see Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428-29 (1991), Defendant's motion to substitute will be granted.

procured additional purchase agreements with numerous structured settlement annuitants." (*Id*. at ¶ 11). In eighteen subsequent transactions, however, Defendant "committed to funding . . . at certain agreed upon discount rates, and then without justification increased the rates it charged to [Plaintiff]" (*id*. at ¶ 12); in twenty-six others, Defendant "promised to fund transactions at given, agreed-upon rates," and later "refus[ed] to fund the transactions at all," thereby requiring Plaintiff to "procure[] funding from other sources that charged higher discount rates" (*id*. at ¶ 13); and in "another set of transactions," Defendant "engag[ed] in obstructive and dilatory tactics by failing to tell [Plaintiff] that, contrary to its prior promises, it would not fund certain transactions, resulting in [Plaintiff's] customers cancelling their contracts" (*id*. at ¶ 14).

**B.  Procedural Background**

On or about March 26, 2010, Plaintiff's counsel sent a letter to Andrew Savysky, Defendant's president, alleging that Defendant had "fail[ed] to keep its promises, representations, and commitments with respect to the funding of certain structured settlement transactions," and stating its intent to litigate if a settlement demand of $630,000.00 was not met. (ECF No. 12, Attach. 2). Defendant's counsel responded, by letter dated April 8, with a request that Plaintiff provide more

3

information, such as copies of the contracts and/or written communications underlying its claims. (*Id*. at Attach. 3).

On April 16, 2010, Defendant commenced an action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, seeking a declaratory judgment that no "rights and obligations exist" between the parties. (*Id*., Attach. 4, Florida complaint, at ¶ 19). Four days later, Plaintiff filed the instant complaint against Defendant in the Circuit Court for Montgomery County, Maryland, alleging breach of contract and promissory estoppel. (ECF No. 2). Defendant was served with the complaint on June 4, and removed the case to this court on June 25, asserting diversity of citizenship as the jurisdictional basis. (ECF No. 1).

On June 28, 2010, Defendant filed a motion to stay this action pending resolution of the state case or, in the alternative, to transfer venue to the United States District Court for the Southern District of Florida, Fort Lauderdale Division (ECF No. 11), and separately filed a motion for a more definite statement (ECF No. 13). Plaintiff has opposed both of these motions. (ECF Nos. 19, 20).

**II. Motion for a More Definite Statement**

Pursuant to Fed.R.Civ.P. 8(a)(2), "a pleading that states a claim for relief must contain . . . a short and plain statement

4

of the claim showing that the pleader is entitled to relief."

Rule 12(e) provides, in relevant part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

As the United States District Court for the Eastern District of Virginia explained in *Frederick v. Koziol*, 727 F.Supp. 1019, 1020-21 (E.D.Va. 1990):

> Such a motion is not a substitute for the discovery process, and where the information sought by the movant is available or properly sought through discovery, the motion should be denied. [*Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D.Cal. 1981)]; *Wheeler v. United States Postal Service*, 120 F.R.D. 487, 488 (M.D.Pa. 1987). The motion for more definite statement is "designed to strike at unintelligibility rather than simple want of detail," and the motion will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading. *Scarbrough v. R-Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D.Wis. 1985); *see Wilson v. United States*, 585 F.Supp. 202, 205 (M.D.Pa. 1984); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 406 (E.D.Pa. 1981).

*See also Khair v. Countrywide Home Loans, Inc.*, No. 1:10cv410 (JCC), 2010 WL 2486430, at *2 (E.D.Va. June 14, 2010) (citing *Frederick* for the same proposition). The decision of whether to grant a motion for a more definite statement is committed to the

discretion of the district court. *See Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998).

Plaintiff's complaint is not "so vague and ambiguous" that Defendant cannot reasonably be expected to prepare a response. As noted, the complaint alleges two counts: breach of contract and promissory estoppel. Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The complaint plainly states that, in or around September 2008, the parties "reached an agreement" that Defendant would provide funding for Plaintiff's structured settlement transactions, and that, in exchange, Plaintiff would assign to Defendant the rights to receive future annuity payments. (ECF No. 2, ¶ 10). The complaint further asserts that Defendant, thereafter, either unilaterally altered terms as to the agreed rates of funding or refused to provide funding altogether, in breach of the parties' agreement. Thus, the elements of a claim for breach of contract are clearly presented.

Plaintiff's promissory estoppel claim is also plainly stated. To succeed on such a claim, Plaintiff must show four elements, which Maryland courts have adopted from Restatement (Second) of Contracts § 90(1) (1979):

> 1. a clear and definite promise;
>
> 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
>
> 3. which does induce actual and reasonable action or forbearance by the promisee; and
>
> 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166 (1996); *see also Union Trust Co. of Md. v. Charter Medical Corp.*, 663 F.Supp. 175, 178 n. 4 (D.Md. 1986). Here, Plaintiff has alleged that Defendant "made promises . . . to fund certain transactions at specified rates" (ECF No. 2, ¶ 21); that Defendant "reasonably expected that its promises would induce [Plaintiff] to proceed with certain purchase agreements and enter into additional purchase agreements" (*id*. at ¶ 22); that those promises did induce Plaintiff to take such actions; and that Plaintiff incurred damages as a result. While Defendant may dispute whether clear promises were, in fact, made, Plaintiff's promissory estoppel claim is not unintelligible.

Defendant contends that it cannot reasonably be expected to answer Plaintiff's complaint because it "cannot admit or deny the existence of a contract whose terms remain a mystery, nor can it admit or deny the existence of unspecified transactions or the correctness of unspecified rates." (ECF No. 14, at 3).

7

In support of this argument, Defendant cites *555 M Mfg., Inc. v. Calvin Klein, Inc.*, 13 F.Supp.2d 719, 724 (N.D.Ill. 1998), for the proposition that, "[i]n a contract dispute, a more definite statement is required when defendants can only guess as to what conduct and contract(s) [an] allegation refers." (Internal marks omitted). In that case, the court granted a motion for a more definite statement where the complaint failed to "identify what oral agreements were made, when they were made, what representatives of [the parties] made the agreements, or what the contents of those oral agreements were." *555 M Mfg., Inc.*, 13 F.Supp.2d at 724. The agreement alleged in the instant complaint is described in considerably more detail. Moreover, Defendant's purported inability to admit or deny Plaintiff's claims is dubious in light of the complaint it filed in Florida state court, which describes at length the business dealings between the parties, expressly denies that any contractual "rights and obligations exist," and seeks a declaratory judgment to that effect. (ECF No. 12, Attach. 4, at ¶ 19).

Defendant's primary contention is not that it cannot formulate a response to Plaintiff's complaint, but that the complaint lacks sufficient detail concerning the precise terms of the alleged agreement. That argument might have been persuasive in the context of a motion to dismiss under Rule 12(b)(6) – particularly under the standard set forth by the

Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009) – but in the present context it is not. *See Frederick*, 727 F.Supp. at 1021 ("[t]he motion for more definite statement is 'designed to strike at unintelligibility rather than simple want of detail'" (quoting *Scarbrough*, 105 F.R.D. at 91)). Accordingly, Defendant's motion for a more definite statement will be denied.

**III. Motion to Stay or, in the Alternative, to Transfer Venue**

Defendant contends that this action should be stayed, pending resolution of the Florida state court matter, pursuant to the doctrine established by the Supreme Court of the United States in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Generally, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005). Thus, the mere fact that an action is pending in a state court "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (internal marks omitted). Indeed, "federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"

*Chase Brexton*, 411 F.3d at 462 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). It is well established, however, that "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quoting *Colorado River*, 424 U.S. at 813). The "exceptional circumstances" in which abstention is appropriate "inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations." *Chase Brexton*, 411 F.3d at 462. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

In *Colorado River*, the Supreme Court recognized that dismissal of a duplicative federal action may be appropriate when "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" favors abstention. *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).[2] The "threshold question in deciding whether *Colorado River* abstention is appropriate is whether

---

[2] Where, as here, "a suit seek[s] only money damages, a federal court may invoke abstention principles only for the purposes of staying the action . . . ." *Quackenbush*, 517 U.S. at 721.

10

there are parallel federal and state suits." *Chase Brexton*, 411 F.3d at 463. If the suits are parallel, the court must balance a number of factors in considering whether "exceptional circumstances" are presented, thereby warranting its abstention. *See Gannett Co. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 741 (4th Cir. 2002).

"Simultaneous federal and state suits are deemed parallel if 'substantially the same parties litigate substantially the same issues.'" *Extra Storage Space, LLC v. Maisel-Hollins Development Co.*, 527 F.Supp.2d 462, 466 (D.Md. 2007) (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). The similarity of the suits is generally assessed in terms of the identity of the parties, the legal issues, and the remedies sought in the respective cases. *See Great American Ins. Co. v. Gross*, 468 F.3d 199, 207-08 (4th Cir. 2006).

Here, the federal and state suits are unquestionably parallel. The parties are identical, the cases involve the same operative facts, and substantially similar legal issues are presented. *See Covance Labs, Inc. v. Orantes*, 338 F.Supp.2d 613, 616 (D.Md. 2004) (finding parallel suits where parties were "substantially similar" and the cases "involved the same operative facts"); *Automated Systems & Programming, Inc. v. Cross*, 176 F.Supp.2d 458, 462 (D.Md. 2001) (finding federal and

11

state cases "unquestionably parallel" where the parties were identical and the issues were "substantially the same"). While it is true, as Plaintiff asserts, that the remedies sought are nominally different, resolution of both cases will turn on whether "rights and obligations exist" between the parties. (ECF No. 12, Attach. 4, at ¶ 19). *See Covance Labs*, 338 F.Supp.2d at 617 (finding remedies "functionally equivalent" where resolution of the issue in state court would preclude litigation of federal claims). "Because the parties, the operative facts, and the issues underlying both the state and federal suits are substantially similar, the . . . negligible difference in remedies sought does not require a finding that the suits are not parallel." *Id*.

Having determined that the federal and state suits are parallel, the analysis turns to whether "exceptional circumstances" are presented warranting this court's abstention. Although not a "rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances." *Gannett Co.*, 286 F.3d at 741. These factors include:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which

> the courts obtained jurisdiction and the
> progress achieved in each action; (5)
> whether state law or federal law provides
> the rule of decision on the merits; and (6)
> the adequacy of the state proceedings to
> protect the parties' rights.

*Great American Ins. Co.*, 468 F.3d at 207-08.

Here, the parties agree that the first factor is inapplicable, as there is no real property at issue.

The second factor, *i.e.*, inconvenience of the federal forum, counsels slightly against abstention because the record does not support a finding that the federal forum is any more or less convenient than the state court forum. *See Gannett Co.*, 286 F.3d at 748 n. 10 (In light of the "exceptional circumstances" standard, where a factor "does not weigh heavily in favor of exercising federal jurisdiction," it nevertheless "counsels against abstention"). "[C]onvenience refers to the 'relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Holland v. Hay*, 840 F.Supp. 1091, 1100 (E.D.Va. 1994) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Defendant contends that "[t]he relative ease of access to sources of proof and the availability of compulsory process weighs in neither direction." (ECF No. 12, at 8). Plaintiff, on the other hand, argues that Defendant's response to its demand letter, requesting supporting

13

documentation as to the agreement at issue, suggests that "[a]ny documents responsive to [Defendant's] requests are in Maryland, as are the witnesses who would authenticate and testify about them." (ECF No. 19, at 14). As the complaint filed by Defendant in the Florida state court makes clear, however, Defendant is just as likely to be in possession of relevant records, and relevant witnesses are just as likely to be located in Florida. (ECF No. 12, Attach. 4, at ¶¶ 8-14). Aside from this point, Plaintiff concedes that "[i]t is no more inconvenient for [Defendant's] Florida witnesses to travel to Maryland than for [Plaintiff's] Maryland witnesses to travel to Florida." (ECF No. 19, at 14). Because this factor does not constitute an "exceptional circumstance" justifying abstention, it weighs in favor of this court retaining its jurisdiction.

The third factor, however, weighs heavily in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co.*, 286 F.3d at 744 (quoting *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19 (1983) (noting that this was "[b]y far the most important factor" in *Colorado River*). "[F]or abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies

14

and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill[-]suited for resolution in duplicate forums." *Gannett Co.*, 286 F.3d at 744. Here, there can be no doubt that the issues raised in both proceedings are virtually identical and that the efforts of both courts are very likely to overlap. *See Automated Systems*, 176 F.Supp.2d at 463 ("The present suit is . . . not merely another piece of the litigation; it is essentially the same piece that the parties are contesting in the state proceedings."). In fact, the parallel litigation is likely to raise "serious *res judicata* problems for either this court or the [state] court, depending on which court first reaches the merits of the dispute." *Baseline Sports, Inc. v. Third Base Sports*, 341 F.Supp.2d 605, 610-11 (E.D.Va. 2004) (citing *Beck v. CKD Praha Holding, A.S.*, 999 F.Supp. 652, 657 (D.Md. 1998)); *see also Covance*, 338 F.Supp.2d at 617 ("if the issue of the restrictive covenant was actually litigated in the state action, then the present claim would . . . be precluded by *res judicata*"); *Poston v. John Bell Co., Inc.*, Civ. No. 5:07-cv-00757, 2008 WL 4066254, at *6 (S.D.W.Va. Aug. 27, 2008) ("denial of Defendants' motion in its entirety will result in two separate lawsuits over essentially the same issues"). Thus, the third factor strongly supports abstention in this case.

The fourth factor, like the second, does not constitute an "exceptional circumstance" militating in favor of abstention. Although the state court proceeding was commenced several days prior to the instant case, that fact alone is insignificant. *See Moses H. Cone*, 460 U.S. at 21 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). Discovery has not yet commenced in either case, and while a potentially dispositive motion to dismiss has been pending in the state case for approximately four months, there is nothing in the record suggesting that the proceedings in state court have advanced significantly further than in this case. *See Poston*, 2008 WL 4066254, at *5 (finding this factor did "not weigh in favor of abstention" where the state court action had "not advanced much further" than the federal case); *cf. Baseline Sports*, 341 F.Supp.2d at 610 (holding that this factor weighed "slightly in favor of abstention" where discovery had proceeded in the state court action, but not in the federal case).

The fifth factor, relating to the presence of a federal question, is neutral in this case. While "[t]he presence of a federal question would strongly encourage the court not to abstain, . . . the mere absence of a federal question does not bear any weight." *Baseline Sports*, 341 F.Supp.2d at 611; *see*

*also Moses H. Cone*, 460 U.S. at 26 ("the presence of federal law issues must always be a major consideration weighing against [abstention]"). Where, as here, state law is implicated in a breach of contract action, that fact alone "do[es] not weigh in favor of abstention, particularly since both parties may find an adequate remedy in either state or federal court." *Gannett Co.*, 286 F.3d at 747 (quoting *Gordon v. Luksch*, 887 F.2d 496, 498 (4th Cir. 1989)). Thus, all that may be said of this factor is that it does not disfavor abstention.

The sixth factor, *i.e.*, the adequacy of the state proceedings to protect the parties' rights, is also neutral. In assessing this factor, a district court must determine whether "the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Poston*, 2008 WL 4066254, at *7 (quoting *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F.Supp.2d 589, 595 (S.D.N.Y. 2006) (quoting *Moses H. Cone*, 460 U.S. at 28)). It appears that Plaintiff could assert its claims in the Florida state court action and that the state court is fully capable of providing relief to either party. Accordingly, the state court is an adequate forum to resolve this matter, and this factor does not weigh in favor of abstention.

On balance, the court is satisfied that this case presents "exceptional circumstances" warranting its abstention pending

17

resolution of the Florida state court matter.  While two factors slightly favor this court retaining jurisdiction and two others are neutral, the critical third factor strongly militates in favor of abstention.  Accordingly, Defendant's motion to stay will be granted, and its alternative motion to transfer venue will be denied as moot.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for a more definite statement will be denied and its motion to stay will be granted.  A separate order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge